UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUCIE MARIE JEANNE LAGARDE,

    Petitioner,

v.                                            Case No. 8:25-cv-715-KKM-AEP

LIONEL BELDA,

    Respondent.
_____

## ORDER

On March 24, 2025, petitioner Lucie Marie Jeanne Lagarde filed a verified petition for the return of her three minor children, V.J.B. (age 10), S.B. (age 8), and M.G.B. (age 6), to France under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89; the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001–11; and the Florida Uniform Child Custody Jurisdiction and Enforcement Act, §§ 61.501–42, Fla. Stat. *See generally* V. Pet. (Doc. 1). Lagarde also filed an ex parte motion requesting a temporary restraining order, an initial show-cause hearing, and an order directing the United States Marshal to serve the TRO and petition on her former partner, Lionel Belda, and seize both his and the children's travel documents pending final disposition of the

1

verified petition. Mot. for TRO (Doc. 2) at 12–13. For the reasons below, except as to the show-cause hearing, that motion is granted.

## I.  BACKGROUND

Lagarde and Belda, citizens of France, are the parents of V.J.B., S.B., and M.G.B., who are all likewise French citizens. V. Pet. ¶¶ 12, 14, 18–22. The family relocated from France to Lakeland, Florida, in June 2019 for Belda's work. *Id.* ¶ 28. Lagarde and Belda separated six months later, in December 2019, and agreed that the children should grow up in France. *Id.* ¶¶ 29–30. They memorialized an agreement governing the terms of their separation and custody arrangement, which provided that the children would reside in France with Lagarde but allowed Belda to bring the children to the United States during the summer holiday. *Id.* ¶ 33; *see* (Doc. 1-2) at 4.

Belda brought the children to the United States on or about July 17, 2023, under the terms of that agreement. V. Pet. ¶ 36. Belda told Lagarde that he would return the children to France on August 25, 2023. *Id.* ¶ 37; *see* (Doc. 1-3) at 4. But he failed to do so. V. Pet. ¶ 38. Lagarde unsuccessfully attempted to reach Belda and the children via WhatsApp. *Id.* ¶ 39. When that failed, she went to the French police to file a report. *Id.* ¶ 40; *see* (Doc. 1-4).

Lagarde sued in French family court in September 2023 "seeking a determination as to the [c]hildren's place of habitual residence and an order that [Belda] immediately

2

return the [c]hildren to France." *Id.* ¶ 50. She also opened a case with the French Central Authority, "which [facilitates] requests for the return of children abducted from France." *Id.* ¶ 51. That December, the French family court concluded that it was in the children's best interest to live in France with Lagarde, affirmed Lagarde and Belda's custody arrangement, "prohibited the [c]hildren from leaving French territory without both parents' written consent," and "ordered [Belda] to pay €900 in monthly child support." *Id.* ¶ 53; *see* (Doc. 1-10). Belda refused to return the children and appealed. V. Pet. ¶¶ 54–55. In October 2024, the French appeals court denied a stay of the custody order and provided that no further appellate proceedings would take place until Belda complied with the lower court's order. *Id.* ¶ 57; *see* (Doc. 1-11).

The French Central Authority had closed Lagarde's file after the favorable family court ruling, but after the children were not returned, she asked the Authority to open a new file. V. Pet. ¶¶ 59–60. It did so, and Lagarde filed her Application for Child Return around May 15, 2024. *Id.* ¶ 61; *see* (Doc. 1-12). The United States State Department secured pro bono counsel on her behalf in mid-January 2025, who filed this petition. V. Pet. ¶¶ 62–66.

After seventeen months without direct contact, Belda sent Lagarde a letter on February 3, 2025, updating his address. *Id.* ¶ 46. In the letter, he explained that he would "protect [the] children" "[r]egardless of the legal consequences." (Doc. 1-8) at 3. Despite

3

Belda's offer in the letter to make the children available via video call, he never responded to Lagarde's request to set up a call for February 17, 2025. V. Pet. ¶¶ 47–49.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a movant must demonstrate (1) that the movant enjoys a "substantial likelihood of success on the merits"; (2) that the movant will suffer an "irreparable injury" without an injunction; (3) that the injury to the movant outweighs the injury to the enjoined party; and (4) that the injunction is not adverse to the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam).

## III. ANALYSIS

I find that the allegations in the petition and its accompanying exhibits satisfy the requirements of a temporary restraining order under Federal Rule of Civil Procedure 65 and the Hague Convention.

First, Lagarde is likely to succeed on the merits. The Hague Convention, through ICARA, aims to "secure the prompt return of children wrongfully removed to or retained in any [signatory] [s]tate." Hague Convention, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, at 98. By facilitating a child's return to a parent left behind, the Hague Convention ensures that legal custody disputes will occur in the country of the child's "habitual residence." *Baran v. Beaty*, 526 F.3d 1340, 1344 (11th Cir. 2008). To secure a

4

child's return, a petitioner must show by a preponderance of evidence that a child is "wrongfully removed." *Id.* at 1345; *see* 22 U.S.C. § 9003(e). A child is "wrongfully removed" if the child's retention in a country violates the "rights of custody" vested in, and exercised by, a party in another country that is the child's "habitual residence." *Pielage v. McConnell*, 516 F.3d 1282, 1286–87 (11th Cir. 2008). Although depending on a "totality of circumstances," a child's habitual residence often lies in "the family and social environment in which [the child's] life has developed." *Monasky v. Taglieri*, 589 U.S. 68, 77 (2020) (alteration in the original) (quotation omitted). A child wrongfully removed from her country of "habitual residence" must be returned to that country unless the respondent establishes "one of several, narrow affirmative defenses." *Stirk v. Lopez*, No. 8:20-CV-2894-SDM-AAS, 2021 WL 1139664, at *6 (M.D. Fla. Mar. 25, 2021).

In both her verified petition and her motion, Lagarde explains that the children were born in France and lived there until June 2019, and that the parents intended to raise the children in France. V. Pet. ¶¶ 25–26; Mot. for TRO at 8–9. More, the parents expressly agreed that the children would live primarily in France, and two French courts ordered that the terms of that agreement should be enforced. V. Pet. ¶¶ 33, 53, 57. Considering the allegations that the children resided predominately in France before Belda kept them in the United States after their summer vacation, that the Lagarde and Belda agreed that the children would reside in France, and that two French courts ordered that the children would

5

reside in France, I find that Lagarde is likely to prove by a preponderance of the evidence that Belda wrongfully removed and retained the children from the country of their habitual residence.

Second, I find that ex parte emergency relief is necessary to prevent irreparable injury. Lagarde alleges that Belda wrongfully retained children in the United States in September 2023 after the end of their summer holiday. V. Pet. ¶¶ 36–39. Since then, Lagarde alleges, Belda has been unresponsive, has refused to give Lagarde access to the children, has tried to renew at least M.G.B.'s passport using a United States address instead of a French one, and has stated that he will advance his view of the children's best interests "[r]egardless of the legal consequences." V. Pet. ¶¶ 39, 42 46–48. Given that Belda has retained the children in the United States against Lagarde's will and refuses to cooperate despite the orders of the French courts, Belda apparently does not intend to allow the children to return to France. *See id.* ¶¶ 86–87. The irreparable harm is evident if Belda flees the jurisdiction with the children, making it difficult or impossible to locate them again.

Third, the threatened injury to Lagarde (potentially the complete loss of access to children) outweighs any damage or prospective injury that Belda may incur (the inability to travel with children outside the Middle District of Florida, Tampa Division, until this Court has had an opportunity to consider the merits).

Finally, no harm to the public exists in temporarily preventing Belda and the children from traveling outside the Middle District of Florida, Tampa Division. Indeed, as the Hague Convention contemplates, resolving child custody issues in the country of residence of the child is in the public interest. *See* Hague Convention, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, at 98. Thus, I find that Lagarde has met the four requirements for injunctive relief.

I conclude that Lagarde has shown good cause for issuance of a temporary restraining order without notice to Belda. *See* FED. R. CIV. P. 65(b)(1). I likewise conclude that security is unwarranted. *Id.* 65(c).

Lagarde's request for an initial show-cause hearing to determine that the children are within the Court's jurisdiction is premature. *See* Mot. for TRO at 12. The United States Marshals will necessarily determine that the children are within the Court's jurisdiction when they take custody of the children's travel documents. And if Belda violates this Order, he becomes subject to the legal consequences, including issuance of a bench warrant and criminal contempt of court. Otherwise, the Lagarde's requested relief is granted.

## IV. CONCLUSION

Accordingly, the following is **ORDERED**:

1. Lagarde's Motion for a Temporary Restraining Order (Doc. 2) is **GRANTED**.

2. To prevent the removal of V.J.B., S.B., and M.G.B. from the Middle District of Florida, Tampa Division, while Lagarde's petition remains pending, this temporary restraining order is issued without notice to Belda. *See* 22 U.S.C. § 9004 (permitting "measures under Federal or State law, as appropriate, . . . to prevent the child's further removal or concealment before the final disposition of the petition").

3. This Order shall be sealed until service upon Belda by the United States Marshal.

4. The United States Marshal is **DIRECTED** to serve this order and the verified petition (Doc. 1 and its attachments) on Lionel Belda at the address provided by Lagarde's counsel in the proposed summons (Doc. 2-1): 14346 90th Ave N, Seminole, FL 33776. If Belda is not present at that address, the United States Marshal shall serve Belda at his place of work, 11928 Seminole Blvd, Largo, FL 33778. Belda shall immediately surrender all his and V.J.B., S.B., and M.G.B.'s travel documents and passports to the United States Marshal pending resolution of the verified petition. The United States Marshal shall then deliver all such travel documents and passports to the Clerk of the Court of the United States District Court for the Middle District of Florida, Tampa Division, to be held pending a determination on the merits of the verified petition.

5. Upon receiving actual notice of this order, Belda is prohibited from removing V.J.B., S.B., and M.G.B. from the Middle District of Florida, Tampa Division pending a hearing on the merits of the verified petition, and no person acting in concert or participating with Belda shall take any action to remove the children from the jurisdiction of this Court pending a determination on the merits of the verified petition.

6. This temporary restraining order is effective immediately and expires on **April 8, 2025**, subject to an extension in accord with Federal Rule of Civil Procedure 65.

7. A hearing on the merits of the verified petition is scheduled to be held before the undersigned on **April 4, 2025, at 2:00 p.m.** in Courtroom 13B, 801 North Florida Avenue, Tampa, Florida. **Belda and V.J.B., S.B., and M.G.B. must appear at the hearing.**

8. Belda is directed to show cause at the hearing as to why V.J.B., S.B., and M.G.B. should not be returned to France and why the other relief requested in the verified petition should not be granted. If Belda wishes to file a response, Belda must do so not later than **April 1, 2025**. Any response must include a legal memorandum and each paper on which Belda relies.

9. **Intentional violation of this TRO can result in a finding of contempt, including the imposition of a fine or confinement or both.**

**ORDERED** in Tampa, Florida, on March 25, 2025.

Kathryn Kimball Mizelle
United States District Judge